UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| Nancy Jo Godfrey, | ) Case No. 2:23-BK-01370-FMD |
| | ) Chapter 13 |
| Debtor. | ) |
| | ) |

## OBJECTION TO CLAIM OF EXEMPTIONS

Creditors Kimberly Whelpley ("Kim Whelpley") and Coastal Resource Staffing, LLC (together with Whelpley, the "Creditors"), by and through their undersigned counsel, hereby object to the homestead exemptions claimed by Debtor Nancy Jo Godfrey ("Debtor" or "Mrs. Godfrey") on her Amended Schedule C filed on June 3, 2025 [ECF No. 68].

## BACKGROUND

1. Kim Whelpley was a business partner of Debtor's late husband.[1] Together, Whelpley and Zeke Godfrey owned Coastal Resource Staffing, LLC ("CRS"), a South Carolina limited liability company that provided staffing services.

2. CRS is governed by an Amended Operating Agreement dated July 8, 2020. Pursuant to the Amended Operating Agreement, Kim Whelpley owned 25% of the membership units and Zeke Godfrey owned 75%. Mrs. Godfrey, the living Debtor in this proceeding, was not a party to the Agreement.

3. Mrs. Godfrey has never been an owner of member of CRS. She provided services to CRS from time-to-time, upon information and belief, and was on the company's payroll. Despite not having any ownership or management rights in the company, Mrs. Godfrey controlled CRS to

---

[1] This bankruptcy case was initiated as a joint Chapter 13. Mrs. Godfrey's husband, Edgar "Zeke" Godfrey, III (hereinafter referred to as "Zeke Godfrey"), passed away after filing.

a large extent, often locking Kim Whelpley out and secreting important information from her, including important financial information. Zeke Godfrey enabled and allowed Mrs. Godfrey to do so.

4. One such act was applying for and obtaining funds from the federal government, specifically Payroll Protection Program ("PPP") funds, in the wake of the Coronavirus pandemic. Mrs. Godfrey did not allow Kim Whelpley to review or approve the PPP application she participated in completing and submitting on CRS's behalf, did not list Kim Whelpley as an owner of CRS on the application, and converted the funds obtained for her personal benefit, secreting all the same from Kim Whelpley. Mrs. Godfrey listed her email address on the application.

5. The Godfreys caused CRS to receive $382,292.00 of PPP funds on May 1, 2020.

6. The Godfreys set up a separate CRS account to which the entirety of these funds was transferred in full to on May 4, 2020 (the "PPP Account"). Bank records show that the Godfreys transferred the funds in the PPP Account to themselves, directly and indirectly,[2] through a series of almost daily cash withdrawals at ATMs or in branch, checks, and other money transfers.

7. The Godfreys restricted Kim Whelpley's access to the PPP Account so that they could put the funds to their personal use. They also planned a move from South Carolina to Florida.

8. Approximately two months later, on July 7, 2020, the Godfreys purchased the waterfront property they now claim as their homestead, 510 Via Cintia, Punta Gorda, FL 33950 (the "Property").

---

[2] Zeke Godfrey and/or Mrs. Godfrey owned and operated another business, Coastal Safety Products, LLC ("CSP"), that Kim Whelpley was not an owner of. There are repeated transfers of PPP funds from CRS to CSP that are not supported by consideration or other legitimate purposes. Upon information and belief, the Godfreys funneled PPP money to themselves individually through these transfers from CRS to CSP.

There are also transfers of the PPP funds from the PPP Account to CRS's operating account and then to the Godfreys.

9. The Godfreys thereafter applied for and caused CRS to receive a second round of relief amounting to $131,105.00 on March 22, 2021.

10. The Godfreys, including Mrs. Godfrey, increasingly diminished Kim Whelpley's role in CRS and access to company information. On or around June 2022, Zeke Godfrey purported to terminate Kim Whelpley's employment with CRS (Kim Whelpley was both an owner and employee). The Godfreys took many preventive measures to conceal their prior actions: they locked Kim Whelpley out of CRS's accounts and emails; took control of Kim Whelpley's cell phone number; and spread false and defamatory statements about Kim Whelpley to both clients and other third parties.

11. Mrs. Godfrey, upon information and belief, then caused CRS to apply for forgiveness of the over $500,000 of PPP funds the company received, making various representations about how the funds were applied.

12. After her complete ouster from CRS, Kim Whepley sued the Godfreys, including Mrs. Godfrey. Kim Whelpley brought the civil suit against the Godfreys in the Charleston County, South Carolina, Court of Common Pleas, alleging violations of the South Carolina Uniform Limited Liability Company Act of 1996, including, but not limited to violations of S.C. Code Ann. §§ 33-44-404(a), -409, and -801, as it related to CRS. Whelpley further asserted a demand for records under S.C. Code Ann. § 33-44-408.

13. The Godfreys continued to secret their actions and financial records from Kim Whelpley in the State Court action. They went so far as ignoring an Order requiring them to comply with discovery requests seeking the production of bank records and other financial information. They did not produce a single document.

14. The State Court judge whose order they violated imposed the sanction of holding them in default. The Godfreys filed for bankruptcy relief the day of the default judgment hearing.

15. Mrs. Godfrey's compliance with discovery rules and obligations in this case has not been much better. Mrs. Godfrey made three boxes of disorganized, jumbled records available for production at her attorney's office. The records do not completely respond to the discovery requests and she's yet to fully answer Interrogatories. Creditors have had to resort to costly and time-consuming efforts to subpoena banks for the Godfreys personal and business records to trace CRS funds, including the PPP funds.[3]

16. Kim Whelpley has discovered from the documents that the Godfreys went to such extremes to hide from her and the Court that in addition to the PPP funds they obtained, they made many other distributions from CRS to Mr. Godfrey without making corresponding, pro rata distributions to Kim Whelpley, and that Mrs. Godfrey converted company funds, often paying her personal credit card bills from the company account.

17. The Godfreys continued to own the Property during the State Court litigation and at the time of filing. Mrs. Godfrey resides there currently, upon information and belief.

18. On November 15, 2023, the Godfreys jointly filed for Chapter 13 bankruptcy. (Voluntary Pet. for Individuals Filing for Bankr., ECF No. 1, filed Nov. 15, 2023).

19. On December 6, 2023, the Godfreys filed their schedules and Chapter 13 Plan. (Schedules, ECF No. 15, filed Dec. 6, 2023); (Ch. 13 Plan, ECF No. 16, filed Dec. 6, 2023).

20. On August 6, 2024, Mr. Godfrey passed. (Suggestion of Death, ECF No. 34, filed Aug. 21, 2024).

---

[3] Creditors reserve the right to amend and/or supplement this objection as additional information becomes available.

21. On June 3, 2025, the Godfreys amended their Schedule C, claiming a homestead exemption in the amount of $450,000. (Am. Schedule C, ECF No. 68, filed June 3, 2025). The Schedules were filed by both Debtors, but the Declaration Concerning the Schedules was signed solely by Mrs. Godfrey. (Id.).

22. On June 20, 2025, Zeke Godfrey was dismissed from this bankruptcy case. (Order Granting Trustee's Ore Tenus Motion to Dismiss Edgar Clarence Godfrey III from Bankruptcy Case, ECF No. 79, entered June 20, 2025).

## RELIEF REQUESTED AND BASIS FOR RELIEF

23. Creditors hereby object to Debtor's claim of the homestead exemption pursuant to Federal Rule of Bankruptcy Procedure Rule 4003(b)(1). In re Graybill, 806 F. App'x 920, 923 (11th Cir. 2020) ("Federal Rule of Bankruptcy Procedure 4003(b) governs objections to a debtor's claim of exemptions. Its general rule imposes a 30-day window for objections, after the later of the § 341(a) meeting of creditors **or any amendment or supplement by the debtor**.") (bold emphasis added); see In re Allen, 454 B.R. 894, 896 (Bankr. S.D. Fla. 2011) ("the filing of the Debtors' amended Schedule C triggered a new objection deadline of 30 days after the date of filing of the amendment.").

24. Upon information and belief, CRS funds were used to purchase the Property, to service the mortgage on the Property, and to improve the Property. Upon further information and belief, certain of the funds, including the downpayment on the Property, are traceable to PPP funds that were fraudulently obtained by Mrs. Godfrey. Other funds, including funds used to pay the mortgage, taxes, and insurance and to make improvements, are, upon information and belief, are also traceable to PPP funds and other funds that the Godfreys wrongfully and fraudulently took from CRS.

25. "The imposition of an equitable lien falls squarely within a recognized exception to Florida's homestead exemption." In re Lee, 574 B.R. 286, 291 (Bankr. M.D. Fla. 2017), aff'd sub nom. Lee v. Wiand, 603 B.R. 161 (M.D. Fla. 2018); Havoco of Am., Ltd. v. Hill, 790 So. 2d 1018, 1028 (Fla.), opinion after certified question answered, 255 F.3d 1321 (11th Cir. 2001) ("We have invoked equitable principles to reach beyond the literal language of the exceptions only where funds **obtained through fraud or egregious conduct** were used **to invest in, purchase, or improve the homestead**.") (bold added).

26. The funds used for the downpayment on the claimed homestead, funds used to build equity in the homestead, and to improve the Property were obtained through fraud and/or egregious conduct.

27. At all times pertinent hereto, Mrs. Whelpley was aware an/or participated in the procurement of these funds. To the extent that she was unaware, this still does not protect her homestead from an equitable lien. See Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein, 619 So. 2d 267 (Fla. 1993) (permitting an equitable lien on a homestead to avoid a wife from receiving a windfall even when the wife was unaware of her husband's use of fraudulently obtained funds to purchase a home); In re Fin. Federated Title & Tr. Inc., 273 B.R. 706 (Bankr. S.D. Fla. 2001), subsequently aff'd sub nom. In re Fin. Federated Title & Tr., Inc., 347 F.3d 880 (11th Cir. 2003) (finding wife's innocence was irrelevant when placing an equitable lien on her homestead, which was obtained using funds from her husband's Ponzi Scheme); In re Lee, 574 B.R. 286 (Bankr. M.D. Fla. 2017), aff'd sub nom. Lee v. Wiand, 603 B.R. 161 (M.D. Fla. 2018) (imposing equitable lien against the homestead of a debtor and his non-debtor spouse, who obtained their homestead through funds obtained from a Ponzi Scheme).

WHEREFORE, Creditors respectfully request that the Court sustain this Objection, deny the Claim of Exemption, impose an equitable lien on the Property, and provide for such other and further relief as is just. If the Court sustains the objection, Debtor may contact the Trustee to discuss purchasing the estate's interest in the pertinent asset.

Respectfully submitted,

<u>*/s/ Jennifer S. Ivey*</u>
**Jennifer S. Ivey (Fla. Bar No. 116192)**
Direct: (843) 727-2216
Email: Ivey@WGLFIRM.com

**WALKER GRESSETTE & LINTON, LLC**
<u>Mail</u>: P.O. Drawer 22167, Charleston, SC 29413
<u>Office</u>: 66 Hasell Street, Charleston, SC 29401
<u>Phone</u>: (843) 727-2200

***Counsel for Creditors Kimberley Whelpley and Coastal Resource Staffing, LLC***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of this OBJECTION TO DEBTOR'S CLAIM OF EXEMPTIONS will be served via CM/ECF on July 2, 2025 on:

Chapter 13 Trustee
Jon M. Waage
P.O. Box 25001
Bradenton, FL 34206-5001

Benjamin G. Martin
3131 S. Tamiami Trail, Suite 101
Sarasota, FL 34239

And will be served via U.S. Mail on July 3, 2025 on:

Nancy Godfrey
510 Via Cintia
Punta Gorda FL 33952

United States Trustee
501 E. Polk Street, Suite 1200

Tampa, Florida 33602

*/s/ Jennifer S. Ivey*
Jennifer S. Ivey